# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

NICHOLAS JAMES TRAMMELL,

     Applicant,

v.                            CASE NO. 8:18-cv-2141-TPB-TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER DENYING PETITION
## FOR THE WRIT OF HABEAS CORPUS

     This action proceeds under Trammell's amended petition under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 16), in which he challenges his convictions for murder in the second degree (Count One), armed burglary of a dwelling with battery (Count Two), and home-invasion robbery with a firearm (Count Three), for which convictions Trammell is imprisoned for life, with a twenty-five-year minimum mandatory on each count. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 20) The Respondent admits the application's timeliness (Response at 11, Doc. 20) but argues that a ground is not fully exhausted.[1]

---

[1] Shortly after Trammell filed this action in 2018 an earlier order (Doc. 4) dismissed the petition as time-barred, however, in 2021 (1) that order was vacated because Trammell had been granted a belated appeal in state court, (2) this case was re-opened, and (3) the respondent was directed to respond to the petition.

## BACKGROUND

Trammell admits to the following facts in his supporting memorandum

(Doc. 17 at 2–3):

> On August 16th, 2011, Petitioner, along with co-defendants Willoughby
> and Harris in the evening hours went to [the victim's home in] Hernando
> County, Florida. Codefendant Harris was armed with an AK-47 and
> Petitioner was armed with a .12 gauge shotgun. Co-defendant Willoughby
> was armed with a handgun. The three defendants went to the home of
> the victim Michael Pfeifer believing that there would be U.S. Currency
> and/or controlled substances there. After the three defendants entered
> the home through the rear door brandishing their firearms, they came
> into contact with Mr. Pfeifer and also another occupant of the home, Mr.
> Cliff Kearney. Mr Pfeifer and Mr. Kearney were put down on the floor at
> gunpoint. Both Mr. Pfeifer and Mr. Kearney were in fear of great bodily
> harm as a result of the defendants' actions.
>
> Defendant Willoughby and Defendant Trammell went into the other
> rooms and proceeded to ransack those rooms. During the course of the
> incident, with the two victims on the floor in the bedroom, there came a
> point in time when Mr. Kearney was struck by one of the firearms about
> the head.
>
> Mr. Pfleifer started to get up from the ground and engaged in a physical
> altercation with Defendant Harris. During the course of that incident a
> struggle occurred with the two victims on the floor in the bedroom.
> During the course of that incident, Trammell was alleged to have fired
> two shotgun rounds striking Mr. Pfeifer in the thigh areas and during
> that course, Mr. Harris discharged his [AK-47] and Mr. Pfeifer was also
> struck with at least one round from that weapon. After the firearms were
> discharged the Defendants obtained some property from the residence
> and fled on foot. Mr. Kearney, who was at the scene, who had been struck
> in the head, eventually called 9-1-1 and members of the Hernando
> County Sheriff 's Office and fire rescue responded to the scene. Mr.
> Pfeifer died at the scene because of the blood loss that he sustained as a
> result of the shots being fired.

Further, Trammell admits (Doc. 17 at 3–4) to the following:

 (1) that a "Band-Aid" found at the scene tested positive for the DNA of

co-defendant Harris;

(2) that co-defendant Harris was arrested and confessed to his involvement;

(3) that co-defendant Willoughby was arrested and confessed to both his involvement and the involvement of the co-defendants;

(4) that Trammell retained the stolen property and buried both the property and the guns with the assistance of a friend;

(5) that Trammell was arrested and denied any knowledge or involvement in the incident;

(6) that while detained in the jail Trammell had a recorded telephone call with the friend and asked whether the property was still buried; and

(7) that the friend contacted the police and led them to where the stolen property and the guns were buried.

As stated above, Trammell was charged with murder in the first degree with a firearm, armed burglary of an occupied dwelling with battery, and home invasion robbery with a firearm during which Trammell possessed and discharged the firearm causing injury.  In exchange for a life sentence, Trammell pleaded guilty to Counts Two and Three as charged and to the lesser offense of murder in the second degree as included in Count One.

Trammell filed a belated appeal, a motion to mitigate sentence under Rule 3.800(c), Florida Rules of Criminal Procedure, and a motion under

Rule 3.850 for post-conviction relief.  Each was unsuccessful.  The Respondent admits (Doc. 20 at 11) that Trammell's federal petition is timely.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998).  Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the

"unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only

the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim issues a reasoned and explanatory opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the

unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Trammell's convictions and sentence. (Respondent's Exhibit O)  Similarly, in another *per curiam* decision without a written opinion, the state appellate court affirmed the denial of Trammell's subsequent Rule 3.850 motion to vacate.  (Respondent's Exhibit X)  The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Sec., Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Trammell bears the burden of overcoming by clear and convincing evidence a state court's determination of fact. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir. 2001). The state post-conviction court's rejection of Trammell's claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit U) Trammell's federal application presents the same two grounds of ineffective assistance of counsel that were presented to the state courts and an additional claim of ineffective assistance of counsel that Trammell contends is entitled to review under *Martinez v. Ryan*, 566 U.S. 1 (2012).

## <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Trammell asserts three claims of ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*,
>
> > First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
>
> *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

A petitioner must prove both deficient performance and consequent prejudice. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on

either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.  Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Trammell must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  To meet this burden, Trammell must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Under 28 U.S.C. § 2254(d), Trammell must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he

standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *see also Dunn v. Reeves*, 594 U.S. 731, 739 (2021) ("This analysis is 'doubly deferential' when, as here, a state court has decided that counsel performed adequately."); *Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)); and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'").

In summarily denying Trammell's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit U at 2)  Because the state court rejected the claims based on *Strickland*, Trammell cannot meet the "contrary to" test in Section 2254(d)(1).  Trammell instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In

determining "reasonableness," the statute limits federal review to determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001).  This presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## Ground One:

Trammell alleges that trial counsel rendered ineffective assistance by misadvising him that his possible sentence had a forty-year cap with a minimum of twenty-five years' imprisonment, whereas he was sentenced to life imprisonment.  The Respondent admits that this ground is exhausted.  (Doc. 20 at 13)  The post-conviction court denied this ground as follows (Respondent's Exhibit U at 3–4) (references to trial transcripts omitted) (brackets original):

> In ground one the Defendant argues that trial counsel was ineffective for misadvising the Defendant [that] there was a forty (40) year cap with a twenty-five (25) mandatory minimum. The Defendant alleges that trial counsel advised the Defendant that based on discussions with Judge Tatti, who was presiding over the case at the time, the Defendant would not receive more than forty (40) years since the co-defendant received a forty (40) year cap. The Defendant argues that had he known he would receive more than forty (40) years, he would not have entered the plea, but instead taken the case to trial.
>
> "Misrepresentations by counsel as to the length of a sentence or eligibility for gain time can be the basis for postconviction relief in the form of leave to withdraw a guilty plea." *State v. Leroux*, 689 So. 2d 235, 236 (Fla. 1996) (*citing Thompson v. State*, 351 So. 2d 701 (Fla. 1977), *cert. denied*, 435 U.S. 998, 98 S. Ct. 1653, 56 L. Ed. 2d 88 (1978)). However, if the

record "conclusively" refutes the claim, a summary denial is appropriate.
*Id.* The Defendant argues that he entered the plea only because he was
told by trial counsel that Judge Tatti agreed to a forty ( 40) year cap.
However, during the change of plea hearing, trial counsel stated on the
record that "[t]here are no promises in regards to the sentence the Court
would impose. We discussed that both with the Court and the State. Mr.
Trammell is aware that there is a 25-year minimum mandatory that
must be applied. And we agree in regards to that[.]" Trial counsel advised
the Court that the Defendant was agreeing to enter the guilty plea in
exchange for the lesser included offense of murder in the second degree as
to Count I. Furthermore, the Defendant affirmed during the plea colloquy
that he understood the plea agreement was for him to enter a guilty plea
to the lesser included charge and was not promised anything other than
what was described in the agreement. The Defendant also signed a
Waiver of Rights and Plea Agreement that indicated the Defendant was
facing up to life in prison with the lesser included charge he agreed to
plead to, and the Defendant acknowledged he read and signed the
agreement. Accordingly, the Court finds that the Defendant was fully
aware he was facing up to life in prison and decided to proceed forward
with his negotiated plea in exchange for the lesser included charge of
murder in the second degree. Therefore, the Defendant has failed show
any prejudice under *Strickland*, and this claim is denied.

The record supports the post-conviction court's finding that Trammell was

"fully aware he was facing up to life in prison" as the possible maximum

sentence.  The "Waiver of Rights and Plea Agreement" (Respondent's Exhibit B)

specifically lists "Life" on page one as the possible term of imprisonment for

each of the three counts, and, by initialing the eighth paragraph on page two,

Trammell admitted that he understood that he will not be "given any leniency,

other than the terms set forth in" the agreement.  The post-conviction court did

not address whether trial counsel performed deficiently but denied the claim

based on Trammell's failure to show prejudice; addressing both components was

unnecessary.  *Strickland*, 466 U.S. at 697 (Because a petitioner must show both

deficient performance and prejudice, "[t]here is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").  The state court's decision is supported by the record and is a reasonable application of *Strickland*. Consequently, Trammell is not entitled to relief under Ground One.

**<u>Ground Two:</u>**

Trammell alleges that trial counsel rendered ineffective assistance by not investigating and informing him about possible impeachment evidence before he pleaded guilty, specifically, that a witness would testify that Willoughby was the co-defendant who shot the deceased.  The Respondent admits that this ground is exhausted.  (Doc. 20 at 13)  The post-conviction court denied this claim as follows (Respondent's Exhibit U at 3–4) (references to trial transcripts omitted):

> In ground two, the Defendant alleges that trial counsel was ineffective for failing to advise the Defendant of a viable defense. Where defendant claims ineffective assistance on the ground that counsel failed to advise of a viable defense, *Strickland's* prejudice prong is established by demonstrating a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. *Grosvenor v. State*, 874 So. 2d 1176 (Fla. 2004) (involving failure to advise client of voluntary intoxication defense). In determining whether a reasonable probability exists that the defendant would have insisted on going to trial, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the trial court at the time of the plea, and the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial. *Id.*
>
> The Defendant argues that trial counsel was ineffective for failing to advise the Defendant of a viable defense when there was no physical evidence to link the Defendant to the crime, co-defendant Robert

Willoughby made inconsistent statements regarding the Defendant's involvement, and a witness identified Mr. Willoughby as the man that admitted to shooting the victim in the leg. However, based on the totality of the circumstances, the Court finds the Defendant has not shown a reasonable probability that he would have abandoned his negotiated plea and taken his chances at trial. During the sentencing hearing, trial counsel agrees that based on Mr. Willoughby's proffer, the forensics, and the facts, Mr. Willoughby's proffer was pretty accurate in how the events took place. Mr. Willoughby stated that while the Defendant, Mr. Harris, and Mr. Willoughby were inside the victim's residence, Mr. Willoughby heard a thump and then two gunshots. Mr. Willoughby stated the three men ran back to their vehicle, and while inside the vehicle leaving the incident, the Defendant stated he fired the gun trying to grab it from [co-defendant] Harris. Once the men returned to Mr. Harris' house, Mr. Willoughby stated the Defendant again admitted he fired the gun. Accordingly, based on the totality of the circumstances, the Court does not believe that the Defendant would likely have turned down the negotiated lesser included charge to proceed to trial. Therefore, the Defendant has failed to establish any prejudice under *Strickland*, and this claim is denied.

The record supports the post-conviction court's finding that Trammell failed to show that he would not have pleaded guilty but insisted on going to trial, a showing required under *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").  The admitted factual basis was that Trammell possessed the 12-gauge shotgun, that he shot two rounds into the deceased's leg, and that the deceased died at the scene due to the loss of blood.  Trammell's admission of the truth of the facts and his admission of guilt "constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity." *Blackledge v.*

*Allison*, 431 U.S. 63, 73–74 (1977); *accord Saldo v. Crosby*, 162 F. App'x 915, 917 (11th Cir. 2006)[2] (applying *Allison*).  Whether trial counsel could have so thoroughly impeached co-defendant Willoughby that a jury would have found Trammell not guilty is simply too speculative, especially given the post-conviction court's review based on the totality of the circumstances.  Trammell fails to meet his burden to show that the state court's decision was an unreasonable application of *Strickland*.  Consequently, Trammell is not entitled to relief under Ground Two.

## Ground Three:

Trammell alleges that both the trial court and trial counsel failed to advise him that the maximum possible sentence was life imprisonment for the charge of murder in the second degree.  The Respondent correctly argues that the trial court error aspect of this ground is unexhausted (Doc. 20 at 13), but the ineffective assistance of counsel aspect is either unexhausted or, as Trammell argues, potentially entitled to review under *Martinez*.  This Order analyzes the two claims as sub-claims A and B.

Sub-Claim A: Trial Court Error:

A petitioner must present each claim to a state court before presenting the claim in federal court.  "[E]xhaustion of state remedies requires that

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error.").

Trammell should have, but did not, present his claim of trial court error on direct appeal — and only after preserving the claim by asserting it in the trial court.  The failure to alert the state appellate court that the trial court allegedly violated a federally protected right fails to meet the exhaustion requirement.  As *Baldwin v. Reese*, 541 U.S. 27, 32 (2004), explains, an applicant must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *see also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1217, 1345 (11th Cir. 2004) ("The exhaustion

doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  An applicant must present to the federal court the same claim that was presented to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "[M]ere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims.").  *See also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

As determined above, Trammell procedurally defaulted the trial court error aspect of ground three, and, as a consequence, this claim is barred from

federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *See generally Coleman v. Thompson*, 501 U.S. 722, 748–51 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). "Cause" must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Trammell must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Trammell establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, the trial court error claim in ground three is procedurally barred from federal review and not entitled to a determination on the merits.

Sub-Claim B: Ineffective Assistance of Counsel:

Trammell alleges that trial counsel was ineffective for not advising him that the maximum possible sentence was life imprisonment.  The Respondent argues that this sub-claim was not exhausted, but the Respondent fails to address Trammell's asserted entitlement to review of this sub-claim under *Martinez*, which applies only if (1) a state requires a prisoner to raise a claim of ineffective assistance of trial counsel in an initial review collateral proceeding, (2) the prisoner failed to properly raise the ineffective assistance of trial counsel claim in his state initial review collateral proceeding, (3) the prisoner did not have collateral counsel or his collateral counsel was ineffective, and (4) the failure to excuse the procedural default would result in the loss of a "substantial" claim of ineffective assistance of trial counsel.  *Martinez*, 566 U.S. at 14.  A "substantial" claim is a claim that has "some merit."  *Id.*

This sub-claim was arguably "fairly presented" as part of Ground One and, consequently, exhausted.  To the extent that it was not, Trammell is not entitled to review because the sub-claim is not "substantial."  In denying relief under Ground One, the post-conviction court found "that the Defendant was fully aware he was facing up to life in prison . . . ."  Under Section 2254(e)(1), such a finding of fact generally binds this Court because "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence."  Consequently, Trammell is not entitled to relief

under Sub-Claim B in Ground Three.

## CONCLUSION

Trammell fails to meet his burden to show that the state court's decision

was either an unreasonable application of controlling Supreme Court precedent

or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20

(2013), recognizes, an applicant's burden under Section 2254 is very difficult to

meet:

> Recognizing the duty and ability of our state-court colleagues to
> adjudicate claims of constitutional wrong, AEDPA erects a formidable
> barrier to federal habeas relief for prisoners whose claims have been
> adjudicated in state court. AEDPA requires "a state prisoner [to] show
> that the state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error . . . beyond any
> possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S.
> [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that
> is because it was meant to be." *Id.*, at [102]. We will not lightly conclude
> that a State's criminal justice system has experienced the "extreme
> malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103]
> (internal quotation marks omitted).

Trammell's amended petition for the writ of habeas corpus (Doc. 16) is

**DENIED**.  The clerk must enter a judgment against Trammell and **CLOSE**

this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Trammell is not entitled to a certificate of appealability  ("COA").  Under

Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute

entitlement to appeal a district court's denial of his application. Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Trammell must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would "find debatable" either the merits of the claims or the procedural issues, Trammell is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Trammell must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 11th day of April, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**